## GOOD MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket 5220.    Promulgated June 7, 1927.

1. INVESTED CAPITAL.—The petitioner corporation conducted its internal affairs much in the nature of a partnership keeping no regular surplus and undivided profits accounts as commonly understood. It did keep individual stockholders' accounts to which each year it credited each stockholder's proportion of the earnings and, when losses occurred, charged to those accounts a proportionate part of the losses. Withdrawals from these accounts were freely made by the several stockholders and not in proportion to stock ownership. One of the stockholders allowed his account to accumulate into large figures while another stockholder owning the same amount of stock drew largely from his account and frequently such account showed a deficit. The petitioner paid 6 per cent interest upon the credit balances in these accounts and those stockholders having overdrafts paid interest to the petitioner. *Held,* in view of the continuous practice of the several stockholders, the credit balances in these accounts must be taken to represent corporate earnings distributed and not surplus or undivided profits within the meaning of section 326 of the Revenue Act of 1918.

2. DEPRECIATION.—Depreciation at the rate of 10 per cent applied upon diminishing balances in the petitioner's account of furniture and fixtures held to be a reasonable allowance for exhaustion, wear and tear of such properties used in the petitioner's business.

*A. E. Graupner, Esq.,* for the petitioner.
*J. Arthur Adams, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits taxes in the amount of $2,231.03 for the calendar year 1919, as determined by the Commissioner in his letter dated May 8, 1925.

The petitioner alleges that the respondent has erroneously—

(1) Excluded from invested capital $41,396.68 of surplus profits of the corporation appearing in special " stockholders surplus " accounts on December 31, 1918.

(2) Allowed for depreciation of furniture and fixtures, a deduction of $723.36 instead of $1,145.36 for the year 1919.

(3) Reduced invested capital as of January 1, 1919, by an adjustment for the income and profits taxes payable for the year 1918, based upon a tax liability of $20,865.20 instead of approximately $12,000 for the year 1918, the alleged overstatement of tax liability being due to the respondent, (a) excluding from invested capital $110,999.93 of surplus profits of the corporation appearing in "stockholders surplus" accounts on December 31, 1917, and (b) allowing for depreciation of furniture and fixtures a deduction of $594.12 instead of $956.69 for the year 1918.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office at 303 East 134th Street, New York City.

The Good Manufacturing Co. was originally organized by one J. N. Crabb, the inventor of a tub and basin stopper, in or about 1896 under the laws of Indiana, with a capital stock of $3,000, divided into 30 shares of the par value of $100 each, and with its principal place of business at Indianapolis, manufactured and sold the patented stopper and other plumbing supplies.

During the period from 1896 to December 24, 1898, A. F. Riegger and his brother, C. Riegger, acquired for $3,000 in cash, the entire issued capital stock of the Good Manufacturing Co. Each brother acquired an equal number of shares but after December 24, 1898, the stock was issued 14½ shares to each of the brothers and one share to Caroline Riegger, their mother, for which she paid nothing and which she held merely to qualify as a director. The two brothers developed and operated the business, C. Riegger remained in the office and A. F. Riegger went on the road to establish trade. After the first election of officers and directors in 1898, there were no stockholders' nor directors' meetings until December 1, 1905, and the business was conducted as though it were a partnership. The Riegger brothers would confer and decide as to all matters pertaining to the business, but kept no minutes nor memoranda with respect thereto. The officers and directors, by name only, continued as such without reelection. The Riegger brothers each received a salary of about $1,200 per annum during the period from 1898 to December 1, 1905, and the profits were left in business as a part of the capital. On December 1, 1905, the accumulated and undivided profits amounted to $133,071.58 charged to the company's surplus account.

In December, 1905, the Riegger brothers decided to sell a one-fifth interest in the business, or one and one-half shares to each of two employees, W. Cronyn and F. H. Samuels. The stock of the Good Manufacturing Co. had a book value of approximately $4,500 a share in December, 1905, but the stock was sold to Cronyn and

Samuels for $3,000 a share as they could not afford to pay more. To prevent Cronyn and Samuels participating in the accumulated profits in excess of what they had paid for, the Riegger brothers, on January 6, 1906, debited the amount of $46,071.58 on the company's surplus account which showed a total of $133,071.58 and credited the same to the following accounts:

| | |
|---|---:|
| Capital Stock | $3,000.00 |
| C. Riegger surplus | 20,817.93 |
| A. F. Riegger surplus | 20,817.93 |
| Caroline Riegger surplus | 1,435.72 |

Prior to that time no capital stock account had been carried on the books. Immediately after January 6, 1906, the Caroline Riegger account was debited by $1,435.72 and one-half of the said amount was credited to the surplus account of each of the Riegger brothers. The amount of $87,000 remained in the surplus account of the company. The above credits and debits were made by the Riegger brothers, but no formal stockholders' or directors' meetings were held nor resolutions passed, authorizing the said book entries. Substantially all of the capital and surplus on December 1, 1905, in the amount of $133,071.58 was invested in such assets as were necessary to the ordinary and usual operation of the business.

No change was made in the management of the business after December 1, 1905, except that Cronyn and Samuels were asked to express their opinions on business matters. The corporate form was practically ignored and the business run as a partnership. The Rieggers considered that they owned the corporate assets rather than merely its capital stock and acted accordingly.

In June, 1913, the Good Manufacturing Co., the petitioner was organized under the laws of New York, with a capital stock of $3,000 divided into 30 shares of the par value of $100 each, and it continued the business of the Indiana company which had been previously moved to New York City. The Indiana corporation was dissolved and its assets transferred to the petitioner, and the capital stock book and books of account were continued in use without any change. In fact there was no change made as to anything except that the Good Manufacturing Co. became a New York corporation instead of an Indiana corporation. The stockholdings and management of the business remained the same.

The Riegger brothers, Cronyn and Samuels, were each paid regular salaries and the net profits for each year were annually credited to the personal accounts of the stockholders in proportion to their stockholdings. Against the personal accounts the stockholders were at liberty to make withdrawals of a portion or all of the amounts credited thereto and all of the stockholders made with-

drawals. A. F. Riegger was the only stockholder who allowed his proportionate share of the profits to accumulate to his account, while each of the others made regular withdrawals in each year and occasionally overdrew. When the said accounts were overdrawn the stockholders paid to the petitioner, interest on the debit balances. Semiannually the petitioner credited to the stockholders' personal accounts, interest at the rate of 6 per cent per annum on the average credit balance.

To prevent payment to the stockholders of the $87,000 surplus which had not been credited to their personal accounts, A. F. Riegger secured the adoption on May 1, 1915, of the following resolution:

That the amount $87,000 which has heretofore been recorded upon the corporation's books as a surplus, is not and has never been a surplus in the accepted sense, but has been money loaned without interest, by the individual stockholders for the purpose of carrying on the business, that it shall now be transferred back to the account of each stockholder, except the sum of $9,000 which shall remain as surplus, as heretofore, that the amounts so transferred are not to be drawn against by any stockholder but shall remain as a permanent loan, without interest, until such time as any stockholder shall withdraw from the corporation in which case it shall be paid, to the withdrawing stockholder, in six months after written notice has been given.

The above was the first formal resolution passed by the petitioner and the only one with reference to the distribution of profits or surplus. In accordance with that resolution the following entries were made on the books:

```
C. Riegger, loan account without interest_____ $35,100
Caroline Riegger, loan account without interest_____   35,100
W. Cronyn, loan account without interest_____    3,900
F. H. Samuels, loan account without interest_____    3,900
```

At that time A. F. Riegger had transferred all of his holdings to the mother's name, for personal reasons not material in this proceeding, but shortly thereafter they were transferred back to his name.

On May 22, 1917, the petitioner's capital stock was increased from $3,000 to $90,000 and the new stock was issued to the stockholders in proportion to their stockholdings. On the petitioner's books the transaction was reflected by debiting each stockholder's "loan account without interest," by the portion of the $78,000 credited thereto in 1915, and by debiting the petitioner's surplus account by $9,000 which had been left therein in 1915, and by crediting $87,000 to capital stock account. The above method was used to capitalize surplus and profits which were already employed in the business. The new stock issue did not affect the stockholders' accounts, the balances of which were on January 1, 1917, as follows: A. F. Riegger, credit,

$119,856.44; C. Riegger, debit, $9,405.98; Cronyn, credit, $160.82; and Samuels, credit, $2,563.92.

On November 1, 1918, the petitioner's capital stock was increased from $90,000 to $190,000 the new stock being issued to the stockholders in proportion to their stockholdings and was reflected on the books by debiting each stockholder's account with his proportionate share and crediting such amounts to capital stock account. None of the stockholders had a sufficiently large balance to his credit to cover his proportion of the new stock issue, except A. F. Riegger, so his account was debited by $56,722.23 which was credited to the personal accounts of the other stockholders as follows: C. Riegger, $44,651.05; Cronyn, $5,887.43; Samuels, $4,998.45, for which latter amounts A. F. Riegger took the personal notes of the other three and said amounts were paid back to A. F. Riegger personally with interest.

The stockholders' accounts, usually designated by the stockholder's name only or sometimes by his name followed by " surplus," for the years 1918 to 1919, inclusive, are as follows:

| | A. F. Riegger | C. Riegger | Cronyn | Samuels |
|---|---|---|---|---|
| Balance December 1, 1912 | $116,768.11 | $8,014.15 | $1,981.82 | $2,151.15 |
| Share of 1912–13 profits | 6,092.27 | 6,092.28 | 702.95 | 702.95 |
| | 122,850.38 | 14,106.43 | 2,684.77 | 2,854.10 |
| Debits during 1912–13 | 4,607.21 | 18,092.75 | 1,122.06 | 16.40 |
| Balance January 1, 1914 | [1] 118,253.17 | 3,986.32 | 1,562.71 | 2,837.70 |
| Share of 1914 N. Y. profits | 12,461.63 | 12,461.63 | 1,437.88 | 1,437.88 |
| Other credits in 1914 | 5,194.27 | | | |
| | 135,909.07 | 8,475.31 | 3,000.59 | 4,275.58 |
| Less share of S. F. loss | 1,128.61 | 1,128.61 | 130.22 | 130.22 |
| Other debits during 1914 | | 3,033.46 | 1,264.75 | 861.47 |
| Balance January 1, 1915 | 134,780.46 | 4,313.24 | 1,605.62 | 3,283.89 |
| Share of 1915 loss | 9,382.03 | 9,382.03 | 1,042.43 | 1,042.43 |
| Other debits during 1915 | 19,190.54 | 7,103.29 | 219.94 | 1,146.01 |
| Balance January 1, 1916 | [1] 106,207.89 | 12,172.08 | 343.25 | 1,095.45 |
| Share of 1916 profits | 11,967.16 | 11,967.16 | 1,329.67 | 1,329.66 |
| Other credits in 1916 | 1,681.39 | | | 138.81 |
| 1916 | [1] 119,856.44 | 204.92 | 1,672.92 | 2,563.92 |
| | | 9,201.06 | 1,512.10 | |
| Balance January 1, 1917 | [1] 119,856.44 | 9,405.98 | 160.82 | 2,563.92 |
| Credits (not profits) during 1917 | 5,298.46 | 9,387.18 | | |
| | [1] 125,154.90 | 18.80 | 160.82 | 2,563.92 |
| Share of 1917 loss | 7,286.49 | 7,286.48 | 809.60 | 809.60 |
| Other debits in 1917 | | | 335.27 | 333.47 |
| Balance January 1, 1918 | [1] 117,868.41 | [1] 7,305.28 | 984.05 | 1,420.85 |
| Share of 1918 profits | 14,211.92 | 14,211.93 | 1,579.10 | 1,579.10 |
| Other credits in 1918 transferred from account of A. F. Riegger | | | 44,651.05 | 5,887.43 | 4,998.45 |
| | 132,080.33 | 51,557.70 | 6,482.48 | 7,998.40 |
| Transferred to capital stock | 45,000.00 | 45,000.00 | 5,000.00 | 5,000.00 |
| Other debits in 1918 transferred to other stockholder's accounts | 56,722.23 | | | |
| Balance January 1, 1919 | 30,358.10 | 6,557.70 | 1,482.48 | 2,998.40 |
| Share of 1919 profits | 16,427.96 | 16,427.96 | 2,191.74 | 2,191.74 |
| | 46,786.06 | 22,985.66 | 3,674.22 | 5,190.14 |
| Debits during 1919 | 14,212.92 | 8,235.06 | 778.88 | 1,881.57 |
| Balance January 1, 1920 | 32,573.14 | 14,750.60 | 2,895.34 | 3,308.57 |

[1] Debit.

The losses occurring in 1915 and 1917 were debited proportionately against each stockholder's personal account, and in that manner the losses were absorbed.

The capital stock of the petitioner from its organization to 1920 was owned as follows:

| Stockholder | Organization to May 22, 1917 | May 22, 1917 to Nov. 1, 1918 | Nov. 1, 1918 to Jan. 1, 1919 | Jan. 1, 1919 to Jan. 1, 1920 |
|---|---|---|---|---|
| | Shares | Shares | Shares | Shares |
| A. F. Riegger | 13½ | 405 | 855 | 817 |
| C. Riegger | 13½ | 405 | 855 | 817 |
| Cronyn | 1½ | 45 | 95 | 95 |
| Samuels | 1½ | 45 | 95 | 95 |
| Beidmeister | | | | 38 |
| Scrivener | | | | 38 |
| | 30 | 900 | 1,900 | 1,900 |

For the years prior thereto and for the taxable year involved the petitioner has taken and been allowed, by the respondent, a deduction from gross income of the amount of interest credited annually to the average credit balances of the stockholders' accounts.

Each of the stockholders reported in his individual income-tax return for the year in which the credit was made, the amount credited to his personal account, as a dividend and paid the surtax thereon.

The petitioner's furniture and fixtures account begins in 1898 and is continued on through the year 1919, showing additions and the depreciation deduction taken each year during that period. For the period from 1913 to 1917, inclusive, $3,625.74, the amount taken as a deduction for depreciation of furniture and fixtures, was credited directly to the asset account. In determining the amount of depreciation for the years 1918 and 1919, it was computed at the rate of 10 per centum per annum on the balance remaining in the asset account after crediting or reducing that account by the sum of $3,625.74.

*Depreciation schedule*

| | Furniture and fixtures | | Total | Rate 10 per cent on diminishing balances | |
|---|---|---|---|---|---|
| | Asset balance Jan. 1 | Additions | | Depreciation allowed | Asset balance Dec. 31 |
| 1918 | $5,664.26 | $276.90 | $5,941.16 | $594.12 | $5,347.04 |
| 1919 | 5,347.04 | 1,886.58 | 7,233.62 | 723.36 | 6,510.21 |

OPINION.

TRUSSELL: The petitioner contends that the sum of the credit balances remaining in the stockholders' surplus account and being

$110,999.93 on January 1, 1918, and $41,396.68 on January 1, 1919, were earned surplus and undivided profits which should be included in invested capital for the said year respectively, and petitioner's counsel have argued that the rule of law enunciated by the Circuit Court of Appeals in *Eaton* v. *English & Mersick Co.*, 7 Fed. (2d) 54, applies to the facts of this case.

In the *English & Mersick* case, *supra*, the court had before it a corporation which carried its surplus and undivided profits in personal stockholders' accounts from which such stockholders made withdrawals relatively in proportion to their stock ownership and allowed large balances to accumulate from year to year which the court held were true surplus and undivided profits. In the instant case, similar personal stockholders' accounts for corporate profits constitute a part of the petitioner's accounting system. There appears to have been no corporate resolution authorizing these accounts as they existed during the taxable year and there is equal lack of any recorded action respecting withdrawals therefrom. And, therefore, in our interpretation of the facts contained in the instant case, we must rely wholly upon the actions of the corporation and its stockholders. Here, we find corporate profits credited to stockholders' accounts, that one stockholder allows his account to accumulate into a large credit balance, while another stockholder, having the same stock ownership, draws his account down to small balances and sometimes his account shows an overdraft. From these facts we must conclude that all the funds credited to these accounts were subject to withdrawal at any time any stockholder chose to make a withdrawal and, further, the corporation itself appears to have recognized that the credit balances in these accounts did not belong to it when it authorized and paid interest upon such credit balances and claimed that interest as a deduction from gross income. The stockholder having the large credit balance reported the amount of corporate profits annually credited to his account in his individual income-tax return as dividend income subject to surtax only and testified that he believed the other stockholders did the same, all of which indicates that both the corporation and the stockholders regarded the credit balances in these accounts as the property of the stockholders. There is nothing in the record of this case which could lead us to conclude that the stockholders' withdrawals from their accounts were in the nature of loans from the corporation to the stockholder, and, if not loans, they must have been dividends. Compare *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982, affirmed by the Circuit Court of Appeals, 17 Fed. (2d) 79. If the above conclusions are warranted by the facts, the instant case differs substantially from the *English & Mersick* case, *supra*, and we are, therefore, constrained to hold that the credit bal-

ances claimed by the petitioner as surplus and undivided profits during the years 1918 and 1919 were not of such a character that they could be included in invested capital as earned surplus. Cf. *Kelly-Buckley Co.*, 1 B.T. A. 1154; *Wm. H. Davidow Sons Co.*, 1 B. T. A. 1215.

During the years 1918 and 1919 the petitioner has been allowed a deduction from gross income on account of the exhaustion, wear and tear of furniture and fixtures computed at the rate of 10 per cent upon the diminishing balances in the furniture and fixtures account. We are of the opinion that the deduction for exhaustion, wear and tear of petitioner's furniture and fixtures on the above basis has furnished a reasonable allowance for the exhaustion, wear and tear of the properties referred to.

Having taken the view as above set forth, we find that the petitioner's invested capital for the year 1919 has been properly computed in so far as it is affected by the asserted tax liability for the year 1918, and that the deficiency for the year 1919 is $2,231.03.

*Judgment will be entered accordingly.*